CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 3 2018

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LYDIA I. CALDWELL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:17CV00375 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | By: Hon. Glen E. Conrad |
| ) | Senior United States District Judge |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Lydia I. Caldwell, was born on March 19, 1970, and has received some college education. Ms. Caldwell was previously married and did not work during her marriage. After her divorce, she worked as a waitress and a dishwasher at a restaurant. However, the Law Judge concluded that the plaintiff has no past relevant work for purposes of her applications for benefits. (Tr. 26). The Law Judge found that Ms. Caldwell last worked on a regular and

sustained basis in 2011 based on Ms. Caldwell's alleged onset date of April 1, 2011. On September 11, 2012, Ms. Caldwell filed an application for a period of disability and disability insurance benefits, and on October 15, 2012, she filed an application for supplemental security income benefits. Ms. Caldwell alleged disability based on fibromyalgia, osteoporosis, Graves disease, arthritis, incontinence, lower back pain, severe fatigue and weakness, carpal tunnel syndrome, migraines, depression, anxiety disorder, and panic attacks. She now maintains that she has remained disabled to the present time. As to her application for a period of disability and disability insurance benefits, the Law Judge found that Ms. Caldwell met the insured status requirements of the Act at all relevant times. (Tr. 19); see, gen., 42 U.S.C §§ 416(i) and 423(a).

Ms. Caldwell's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 1, 2016, the Law Judge applied the five-step sequential process for evaluating disability claims.[1] 20 C.F.R. §§ 404.1520 and 416.920. The Law Judge found that Ms. Caldwell has not engaged in substantial gainful activity since her alleged onset date of April 1, 2011,[2] and that she suffers from severe impairments including fibromyalgia, Graves ophthalmopathy, degenerative disc disease, osteoporosis, hypothyroidism, stress incontinence, history of bilateral carpal tunnel syndrome, headaches, history of edema, bipolar disorder, and anxiety. The Law Judge then assessed Ms. Caldwell's residual functional capacity as follows:

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

[2] The Law Judge observed that Ms. Caldwell worked as a house cleaner after the alleged onset date, but accepted the alleged onset date for purposes of his analysis because the record did not permit him to determine whether Ms. Caldwell's work as a house cleaner qualified as substantial gainful activity. (Tr. 19).

2

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb, stoop, kneel, crouch, and crawl. She can perform frequent (but not constant) handling. She could have occasional exposure to excessive noise and vibrations. She would be able to perform simple, routine, unskilled work tasks, which do not require exposure to hazards, allow for regularly scheduled breaks, and have no more than occasional changes in the work setting. She would require no more than occasional interaction with the public.

(Tr. 22). Given this residual functional capacity, and after considering Ms. Caldwell's age, education, and prior work experience, as well as the testimony of a vocational expert, the Law Judge determined that Ms. Caldwell retained sufficient functional capacity to perform certain light work roles existing in significant number in the national economy.[3] (Tr. 26). Accordingly, the Law Judge concluded that Ms. Caldwell has not been disabled since 2011, is not presently disabled, and is not entitled to either disability insurance benefits or supplemental security income benefits. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Ms. Caldwell has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described

---
[3] Although the Law Judge acknowledged that Ms. Caldwell briefly worked as a dishwasher and waitress, he considered her to have no past relevant work history for purposes of making a determination as to whether Ms. Caldwell could perform any past relevant work roles or other work roles existing in significant number in the national economy.

3

through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Caldwell's medical records, the relevant medical opinions, Ms. Caldwell's testimony about her impairments, and Ms. Caldwell's characteristics.

The medical record reveals that Ms. Caldwell received her primary care from Dr. Caren Aaron from the time of her alleged onset date in 2011 through mid-2013, and from Dr. Kimberly A. Dulaney since mid-2013. (Tr. 41). Ms. Caldwell has a history of treatment for Graves disease, degenerative disc disease, fibromyalgia, carpal tunnel syndrome, and stress incontinence. Ms. Caldwell has been advised to treat the symptoms of her Graves disease, a thyroid eye condition, with eye drops and ointment (Tr. 718), and has been directed to take an appropriate dose of her thyroid medication and Potassium (Tr. 1125). In 2015, Dr. Dulaney determined that Ms. Caldwell's thyroid was much improved and almost within the normal range. (Tr. 793). Ms. Caldwell has complained of back pain, but despite some indication of mild multilevel degenerative joint disease, her imaging "was essentially negative." (Tr. 381-83). A 2015 image of Ms. Caldwell's lumbar spine showed that she has normal alignment and normal disc heights and facet joints. (Tr. 1000). Ms. Caldwell has reported some improvement in her pain through the use of pain medication and epidural injections (Tr. 634), and has been advised to perform lower back exercises and aquatic therapy to treat her lower back pain and fibromyalgia (Tr. 967). Ms. Caldwell has also undergone procedures to correct her bilateral carpal tunnel syndrome and did not experience any complications with the procedures. (Tr. 493-

94, 525-26). Additionally, Ms. Caldwell underwent a bladder sling replacement in 2012 for stress urinary incontinence. In 2013, Ms. Caldwell requested another referral to urology because of pain and cramping related to the sling replacement (Tr. 469), but the record does not reflect significant later treatment for this problem.

Ms. Caldwell's medical record also indicates that she has been diagnosed with bipolar disorder and has reported feelings of depression and anxiety. Dr. Aaron noted that Ms. Caldwell reported an inability to leave her apartment except to attend medical appointments or go to the grocery store as well as irritability, panic attacks, and fatigue. (Tr. 628-29). While receiving treatment from Dr. Aaron, Ms. Caldwell took medication for her anxiety. (See Tr. 622, 626). However, Dr. Aaron's records also reflect periods in which Ms. Caldwell appeared to have a good mood, good affect, and no signs of anxiety or depression. (Tr. 616, 630, 633, 694). In 2015, Dr. Dulaney observed that Ms. Caldwell expressed some difficulty with concentration, restless sleep, paranoia, and irritability. (Tr. 781, 1020). Ms. Caldwell also briefly received care at the Center for Emotional Care in 2015. There, the psychiatrist's report noted that Ms. Caldwell attended weekly therapy sessions and had a history of taking medications for anxiety, depression, and bipolar disorder. (Tr. 1049-50). Although Ms. Caldwell had described her concentration as "off" to Dr. Dulaney (Tr. 781), the psychiatrist's report described Ms. Caldwell as having a good affect, good memory, and "good attention and concentration" (Tr. 1049). Ms. Caldwell reported to Dr. Dulaney that she experienced some improvement in her mental health symptoms with medication and counseling. (Tr. 998).

In addition to the medical record, the Law Judge considered the opinions of the state agency consultants and Ms. Caldwell's treating physician, Dr. Aaron. The state agency consultants opined that Ms. Caldwell could perform light work with certain conditions and was

5

moderately limited in her ability to maintain attention and concentration for extended periods, but "would be able to meet the basic mental demands of competitive work on a sustained basis." (Tr. 104-08, 120-28). A state agency consultant explained that although Ms. Caldwell experiences stress and worry, her mental status exams fall within normal limits, she takes medication to manage symptoms, and she has the ability to complete household activities and go to the store and medical appointments. (Tr. 127). The consultant opined that Ms. Caldwell fears crowds but can otherwise maintain socially appropriate behavior as demonstrated by her socialization with her daughter and endeavors outside the home. (Tr. 128). The consultant recognized that Ms. Caldwell had not received any "significant psychiatric care" since her initial filing and had "not been hospitalized or received intensive inpatient or outpatient psychiatric care." (Tr. 128). The consultant concluded that Ms. Caldwell "remains capable of simple, routine work." (Tr. 128). However, one of the plaintiff's treating physicians, Dr. Aaron, opined that Ms. Caldwell is disabled due to a combination of physical and emotional causes. (Tr. 630, 643, 667, 682). The Law Judge determined that Ms. Caldwell's complaints and Dr. Aaron's notes based on those complaints were not entirely consistent with the overall medical evidence, which was reviewed by the state agency consultants. The court believes that substantial evidence supports the Law Judge's reliance on the state agency consultants' opinions, inasmuch as the court agrees that these opinions are consistent with the objective findings in the record.

Through his consideration of the state agency reports, the court believes that the Law Judge was able to properly consider the synergistic effect of all of plaintiff's physical and emotional problems. Stated differently, the court believes that, in this case, the state agency reports provide substantial evidence for the Law Judge's disposition.

The Law Judge did not give significant weight to Dr. Aaron's opinions that Ms. Caldwell was unable to seek or maintain employment because of back pain, reduced stamina, depression, and incontinence; that Ms. Caldwell was disabled; or that Ms. Caldwell's activities of daily living were markedly limited because of Ms. Caldwell's difficulty with completing tasks. (Tr. 630, 643, 667, 682). Dr. Aaron assumed that Ms. Caldwell was "medically compliant." (Tr. 630). To the extent Dr. Aaron opined that Ms. Caldwell was disabled, the Law Judge rejected the opinion as encroaching on a judgment reserved for the Commissioner. (Tr. 25). The Law Judge accorded reduced weight to the remainder of Dr. Aaron's opinions because she largely relied on Ms. Caldwell's subjective complaints, which the Law Judge did not find entirely credible, and her opinions conflicted with the objective medical evidence in the record. (Tr. 25).

The Law Judge did not fully credit the subjective complaints of Ms. Caldwell because of her limited work history and history of drug and alcohol abuse. (Tr. 25). Ms. Caldwell testified at the administrative hearing that she experiences approximately three migraines a month, joint pain, pain in her hands, nausea, diarrhea, difficulty sitting for more than 15 to 20 minutes, difficulty standing for more than 10 to 15 minutes, feelings of fatigue due to her thyroid condition and medication, blurred vision, trouble holding objects, difficulty concentrating, and three to four panic attacks a week. (Tr. 50-62). In finding Ms. Caldwell's statements to be of limited credibility, the Law Judge observed that Ms. Caldwell filed for disability as early as 2005, but continued to work for several years after 2005 and even continued to work in an informal manner after the alleged onset date for her instant applications for benefits. (Tr. 25). The Law Judge further observed that Ms. Caldwell did not use her prescription drugs as prescribed, took non-prescribed and illegal drugs, and has not yet secured treatment for her drug use. (Tr. 45, 48, 60, 731). A few weeks after being confronted about her use of controlled and

illegal drugs (Tr. 731), Ms. Caldwell arrived at the emergency room and was found to be intoxicated following a night of drinking with her boyfriend (Tr. 989). Moreover, in assessing the extent of Ms. Caldwell's nonexertional limitations, the Law Judge properly considered Ms. Caldwell's treatment history, which reflects a lack of regular or significant psychiatric or psychological care. The Law Judge noted that Ms. Caldwell received only some counseling services, which she later ceased. (Tr. 25).

Finally, the Law Judge considered the characteristics of Ms. Caldwell. The Law Judge observed that Ms. Caldwell regularly performs light chores, is able to handle her finances, and can independently shop at stores or attend medical appointments. (Tr. 21). The Law Judge recognized that Ms. Caldwell has described her concentration as being "off" and found that Ms. Caldwell has moderate difficulties in concentration, persistence, or pace. (Tr. 21). The Law Judge also concluded that Ms. Caldwell experiences moderate limitations in social functioning based on Ms. Caldwell's complaints. (Tr. 21). The Law Judge asked the vocational expert about the availability of jobs for a hypothetical individual of Ms. Caldwell's age and experience who can perform light work with occasional climbing, stooping, kneeling, crouching, and crawling with frequent, but not constant, handling, no more than occasional exposure to excessive noise or vibrations, limited to simple, routine, unskilled tasks, without exposure to hazards and that allows for regularly scheduled breaks of every two hours or so with no more than occasional changes in the work setting and no more than occasional interaction with the public. (Tr. 66). The vocational expert testified that such an individual could perform jobs that exist at the light or sedentary exertional levels such as a marker, a routing clerk, an addressing clerk, or a stuffer. (Tr. 65-67). The Law Judge relied on the vocational expert's testimony in concluding that Ms. Caldwell retains sufficient functional capacity for specific work roles. The court believes that

8

the vocational expert's consideration of the available evidence and the assumptions under which the expert deliberated are both reasonable and consistent with Ms. Caldwell's record. Thus, the court concludes that the Law Judge's reliance on the vocational expert's testimony is supported by substantial evidence. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

On appeal to this court, Ms. Caldwell, through counsel, makes three arguments in support of her motion for summary judgment. The plaintiff's first argument presents a close question. As reflected above, the Law Judge specifically found that plaintiff experiences moderate limitations in concentration, persistence, and pace and moderate limitations in social functioning. (Tr. 21). Yet, in formulating his findings as to plaintiff's residual functional capacity, the Law Judge did not include the deficiencies in concentration, persistence, and pace. Nor did the Law Judge include such limitations in concentration, persistence, or pace in the hypothetical questions propounded to the vocational expert at the administrative hearing. As to social functioning, the questions put to the vocational expert only assumed that the plaintiff is limited to occasional interaction with the public. Citing a variety of decisions, most notably that of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), plaintiff argues that the Law Judge's finding of a limitation to simple, unskilled work with no more than occasional interaction with the public does not necessarily imply, or take into account, moderate limitations in concentration, persistence, and pace or moderate limitations in social functioning.

This court has consistently ruled that a Law Judge's finding of limitation to simple, unskilled work simply does not take into account a claimant's moderate limitations in her ability to concentrate, work regularly, and stay on task. See, e.g., Sexton v. Colvin, 21 F.Supp.3d 639, 642-43 (W.D. Va. 2014). Stated differently, the court believes that, in such circumstances, the

9

Commissioner fails to carry the burden in going forward with the evidence as to the existence of other jobs a claimant might be expected to perform, given a comprehensive consideration of all of the claimant's impairments. See Walker v. Bowen, supra. However, in the instant case, the court believes that the Law Judge properly relied on the state agency reports, which found that Ms. Caldwell can sustain work activity and maintain socially appropriate behavior outside of crowds despite her medical conditions. The Law Judge explained that evidence of Ms. Caldwell's difficulties with concentration and social functioning is entirely subjective (Tr. 21, 25), and that Dr. Aaron's opinions are not as credible as the state agency consultants' findings, which the Law Judge determined to be more consistent with the overall record (Tr. 26). The state agency consultants recognized that Ms. Caldwell's physical exams have been unremarkable and that she has experienced success with medication and surgical interventions. The consultants also relied on Ms. Caldwell's ability to socialize with her daughter, drive to stores and doctors' offices, and to complete tasks, such as household chores and grocery shopping, without assistance. Moreover, Ms. Caldwell has not regularly received treatment from a psychiatrist or psychologist and has not received any significant psychiatric care since her initial filing. Thus, there is reason to believe that some of Ms. Caldwell's mental health problems could be addressed and alleviated through appropriate, professional intervention. Based on these facts, the court agrees with the Law Judge's observation that that plaintiff's moderate difficulties are not so severe as to prevent all forms of work activity. In other words, in many of the cases decided under the rationale of Mascio, the Law Judge made an independent conclusion that the claimant's moderate limitations would not prevent performance of simple, unskilled work roles. However, in the instant case, the state agency consultants made that determination, and the court believes the Law Judge's reliance on such medical evidence, as well as the plaintiff's

circumstances and testimony, support the Law Judge's determination that Ms. Caldwell's emotional difficulties do not prevent performance of the simple, unskilled work roles for which she is otherwise physically capable of performing. See Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017) (holding that remand was not required under Mascio where the opinions of two medical professionals, one of which was a state agency psychologist, "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact.'"); Johnson v. Berryhill, No. 3:16CV00071, 2017 WL 3403798, at *5 (W.D. Va. Aug. 8, 2017) (ruling that the rationale of Mascio did not apply in light of the medical evidence considered by the Law Judge).

Second, Ms. Caldwell argues that the Law Judge erred in failing to give significant weight to the opinion of her treating physician, Dr. Aaron. The administrative regulations accord controlling weight to opinions from a treating medical source as long as the source's opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, the court believes that the Law Judge properly awarded reduced weight to Dr. Aaron's opinion. The Law Judge recognized Dr. Aaron as Ms. Caldwell's treating physician, but determined that "based on the overall objective evidence, including the claimant's continued work after her alleged onset date, [Dr. Aaron's] opinions are not entitled to significant weight." (Tr. 25). The court agrees that Dr. Aaron's opinions relied substantially on Ms. Caldwell's statements of pain and emotional problems, and do not find support in the objective

11

medical record or in Ms. Caldwell's behavior. Indeed, there is every reason to believe that plaintiff's mental health could be expected to improve with appropriate, professional intervention.

The objective findings indicate that despite some mild lumbar degenerative disc disease and tenderness, Ms. Caldwell's lumbar spine images appeared largely normal. Ms. Caldwell has been able to sustain tasks such as grocery shopping without assistance, and the medical record does not indicate that she experiences such severe pain that she is limited in her mobility. Ms. Caldwell has received surgery to relieve her pain from carpal tunnel syndrome, and the record does not reflect more than reduced grip strength in the aftermath of the surgery. Ms. Caldwell has also not experienced any significant complications since her procedure for urinary incontinence. With adjustments to medications, Ms. Caldwell's Graves disease has remained stable. As to her complaints of migraines and stomach pains, the record does not show that such problems have occurred with such frequency or severity as to interfere with daily activities. Although there is some evidence that Ms. Caldwell experiences anxiety, depression, and mood swings, other evidence shows that she is able to perform normal daily activities and socialize with her daughter. Moreover, the record indicates that Ms. Caldwell has not received appropriate, regular care from a psychiatrist or a psychologist, which could alleviate some of her mental health symptoms.

The Law Judge recognized the absence of complications or continued problems following surgical and other interventions for Ms. Caldwell's various conditions. (Tr. 25). Additionally, the Law Judge challenged Dr. Aaron's assumption that Ms. Caldwell was medically compliant, recognizing Ms. Caldwell's history of drug and alcohol problems, including her abuse of narcotics like the type prescribed by Dr. Aaron. The Law Judge

recognized that Dr. Aaron's opinion did not reflect Ms. Caldwell's drug use. (Tr. 25). Thus, Dr. Aaron's opinion relied on subjective complaints and assumptions not supported by the record, whereas the state agency consultants' opinions are supported by the record. In light of the foregoing, the court concludes that substantial evidence supports the reduced weight given to Dr. Aaron's opinions.

Third, Ms. Caldwell contends that the Law Judge's assessment of her credibility is not supported by substantial evidence. Ms. Caldwell maintains that the Law Judge did not properly consider her testimony and subjective complaints. Although Ms. Caldwell testified at the administrative hearing that she continues to experience pain, fatigue, and difficulty maintaining attention, such testimony is disproportionate to the objective medical findings that the Law Judge reviewed and which the court has detailed above. The findings, when considered in light of Ms. Caldwell's drug use, support the Law Judge's conclusion that Ms. Caldwell does not suffer from disabling pain or emotional conditions. Accordingly, substantial evidence supports the Law Judge's credibility determination, and that determination should not be disturbed. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In affirming the Commissioner's final decision, the court does not suggest that Ms. Caldwell is totally free of pain and discomfort. However, the court recognizes that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Id. at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Ms. Caldwell's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence.

Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 13th day of June, 2018.

*[signature]*
Senior United States District Judge